## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ORIGINAL MANN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-1294** |
| **DNA ANALYST, ET AL.** | **SECTION "M"(4)** |

## REPORT AND RECOMMENDATION

Several defendants have filed motions seeking dismissal of plaintiff Original Mann's original and amended complaints: (1) **Motion to Dismiss (ECF No. 34)** by Louisiana Attorney General Jeff Landry; (2) **Motion to Dismiss (ECF No. 45)** by U.S. Attorney Duane Evans and current and former Assistant U.S. Attorneys Maurice Landrieu, Elizabeth Privitera, William Quinlan, and Gregory Kennedy; (3) **Motion to Dismiss the Amended and Supplemental Complaints (ECF No. 47)** by Innocence Project, Inc.; and (4) **Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6), or alternatively, for Summary Judgment Pursuant to F.R.C.P. 56 (ECF No. 53)** by Jefferson Parish Sheriff's Office.[1]   This was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**.   Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1] The record contains no indication that any defendant has been properly served.  Mann mailed from prison mock summons (not issued by the clerk of court) to defendants, which does not comply with Fed. R. Civ. P. 4(m). These defendants, nevertheless, filed these motions.

I.      **Factual and Procedural Background**

Plaintiff Original Mann ("Mann") (a/k/a Cyrus Casby and Original Juice Man) is a convicted inmate currently housed in the U.S. Penitentiary in Atwater, California.[2]  Mann filed this *pro se* civil rights complaint against defendants DNA analysts Ann Montgomery ("Montgomery"), Bonnie Dubourg ("Dubourg"), and Greg Harrell ("Harrell"), Jefferson Parish Sheriff's Office ("JPSO"), U.S. Attorney Duane Evans ("Evans"), Assistant U.S. Attorneys Maurice Landrieu ("Landrieu"), Elizabeth Privitera ("Privitera"), William Quinlan ("Quinlan"), and Gregory Kennedy ("Kennedy"), defense attorneys Michael Riehlmann ("Riehlmann"), Robin Ljungberg ("Ljungberg"), and Jerome Matthews ("Matthews"), Louisiana Attorney General Jeff Landry ("Landry"), the Innocence Project – New Orleans, the Innocence Project – New York, the American Civil Liberties Union ("ACLU"), the National Association for the Advancement of Colored People ("NAACP"), Black Lives Matter, and the American Society of Crime Laboratory Directors ("ASCLD").

Having thoroughly reviewed and broadly construed Mann's original and amended complaints, Mann presents claims against these federal and state officials, and several private entities, seeking monetary relief for alleged wrongdoings which culminated in his federal criminal conviction in *United States v. Casby*, Crim. Action 11-130 (E.D. La.), and his continued imprisonment.  The events underlying Mann's federal conviction under his prior name, Cyrus Casby, were summarized by the District Court in that case as follows:

> Jefferson Parish Sheriff's Deputies responded to a fire in Apartment C of a two-story four-plex at 1005 Tallowtree Lane in Harvey, Louisiana in the early morning of November 10, 2014.  The bodies of Cynthia Carto, her 19-month-old daughter Cyanna Carto, Janice Carto, and Cleveland McGinnis, Jr. were found

---

[2] ECF No. 59.

inside. Cynthia died from multiple stab wounds before the fire started. Janice and Cleveland also had stab wounds but were alive when the fire began. They, along with Cyanna, died as a result of the fire. Jarvis Carto survived the fire but sustained significant brain damage.

Defendant Cyrus Casby ("Casby") was taken to the Jefferson Parish Sheriff's Office within an hour. Casby waived his Miranda rights and gave three statements to detectives. In the first two, Casby denied setting the fire but admitted that he was in the apartment a few hours before the fire and had an altercation with unknown males who tried to steal his car radio. In the third, Casby admitted to fighting with and stabbing the Carto family in self-defense and burning his leg as he fled the apartment. Casby was prosecuted for four counts of second degree murder in the 24th Judicial District Court for the Parish of Jefferson. On May 31, 2008, the jury acquitted him of all counts.

On June 2, 2011, a federal grand jury indicted Casby for arson that resulted in the deaths of Cyanna and Cleveland and the injuries of Janice, Jarvis, and Fireman Walter Allen, in violation of Title 18, United States Code, Section 844(i). This Court made numerous accommodations in its appointment of counsel throughout this case. First, two attorneys were appointed for the then-capital proceedings: Valerie Welz Jusselin and Kerry P. Cuccia. After motions were filed and hearings were held, the Court granted Casby's request to replace them with two CJA-appointed counsel. When the Government indicated it would not seek the death penalty, the Court appointed Robin Ljungberg in place of the two prior CJA counsel. Mr. Ljungberg was appointed at the recommendation of the Federal Public Defender, and he represented Casby at trial.

Casby was convicted after a five-day trial. He then fired Mr. Ljungberg, and the Court appointed Michael Riehlmann. Ultimately, Casby fired Mr. Riehlmann and retained his seventh attorney in this case, Jerome Matthews.

After Casby was sentenced to life imprisonment and a notice of appeal was filed, Mr. Matthews was permitted to withdraw. Casby filed a motion to proceed pro se in his criminal appeal, and the Fifth Circuit allowed Julie Tizzard, counsel hired by Casby's family, to withdraw. The Fifth Circuit gave Casby three opportunities to pursue his appeal before finally dismissing his appeal for want of prosecution on December 2, 2016. The United States Supreme Court denied Casby's petition for writ of certiorari.

*United States v. Casby*, No. 11cr130, 2018 WL 6602088, at *1 (E.D. La. Dec. 17, 2018) (order denying 28 U.S.C. § 2255 motion to vacate).

In this case, Mann seeks monetary and injunctive relief alleging that the defendants, through his federal criminal conviction after an unsuccessful state prosecution, violated his right to be free from double jeopardy. ECF No. 5 (Original Complaint). He also claims that the DNA

analysts framed him for murder based on their inaccurate testing of the DNA evidence.  He also asserts that his prior defense attorneys ignored and failed to correct the invalid evidence and wrongdoings by the prosecutors.  He further sues the other defendants *in globo* for using tax dollars to protect others' civil rights while ignoring his and preventing him from exhaustion administrative remedies.

He further seeks a finding of reasonable doubt about his guilt because the DNA evidence was contaminated when the clothing and items it was taken from had been mixed, transferred without a proper chain of custody, and removed from the sequence in which they were seized by JPSO deputies.  ECF No. 6 (Amended Complaint).  He also claims that the analysts lied about what they tested and when items were tested.  He also claims that defendant Dubourg committed perjury where her state and federal trial testimony differed about unknown male DNA she discovered.  *Id*. at 4.  He also complains that he has been denied access to copies of the applicable standard operating procedures and was called a liar when seeking collateral assistance.

Mann also seeks to hold the federal prosecutors responsible for relying on the mishandled DNA and for Assistant U.S. Attorney Landrieu's alleged withholding of iPhone records, bedroom photographs, psychiatric records, and an Astro van chain of custody report.  ECF No. 15 (Third Amended Complaint).  Mann claims this withholding was part of a *Brady* motion addressed in his federal criminal proceeding Crim. Action 11-130.  He also claims that the federal prosecutors relied on false and perjured testimony to gain a conviction.  He further claims that U.S. Attorney Evans failed to take action on his "DNA complaint" in 2017, and instead "unethically" wrote to Attorney General Landry and placed responsibility on JPSO without himself taking any action on

the complaint.  ECF No. 12, at 9.  Mann seeks compensatory damages from the prosecutors for defamation, cruel and unusual punishment, trauma, and vindictive prosecutions.

Mann also claims that he has suffered mental repercussions as a result of defendants' mishandling of his criminal evidence.  Mann asserts that he is being harassed, sexually assaulted, and having other issues in federal prison which constitutes cruel and unusual punishment resulting from defendants' wrongdoings.  ECF No. 12, at 6 (Second Amended Complaint).  As a result, Mann seeks $126 million for himself, $10 million for his family foundation, $10 million in cryptocurrency, counseling, and restraining orders to prevent the JPSO, the New Orleans Police Department, and the Federal Bureau of Investigations from arresting, stalking, and harassing him when he is released from prison.  ECF Nos. 5, 6.

## II.    **Standards of Review**

### A.    **Screening for Frivolousness**

Plaintiff is a federal prisoner.  As such, his complaint is subject to preliminary screening and dismissal under 28 U.S.C. § 1915A.  *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998). Section 1915A "institutes certain screening procedures once a complaint is received by a district court" and is "quite similar to the roles played by Federal Rules of Civil Procedure 11 and 12(b)(6)."  *Id*. at 580, n.2; *see also Garcia v. Jones*, 910 F.3d 188, 190 (5th Cir. 2018) ("We review a dismissal under 28 U.S.C. § 1915A(b)(1) for failure to state a claim *de novo*, applying the same plausibility standard applicable to Federal Rule of Civil Procedure 12(b)(6) dismissals."). Pursuant to § 1915A(b)(1), federal courts are mandated to initially screen prisoner complaints against government officials or entities to identify cognizable claims and dismiss the complaint or any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief

may be granted. *See Coleman v. Tollefson*, 575 U.S. 532 (2015) (noting the congressional focus

on trial court screening of prisoner complaints and dismissal of claims that are frivolous, malicious,

or fail to state a claim for relief)); *Hines v. Graham*, 320 F. Supp. 2d 511, 526 (N.D. Tex. 2004).

The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). A claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**B.    Motions Pursuant to Rules 12(b)(1), (6)**

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint if it lacks jurisdiction over the subject matter or for failure to state a claim upon which any relief may be granted. The same standard is applied for a motion to dismiss brought under either Rule 12(b)(1) for lack of jurisdiction. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guidry*, 512 F.3d at 180 (quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In order for a claim to be plausible at the pleading stage, the complaint need not

strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See Id*.

Furthermore, the Fifth Circuit has explained that, before dismissing the complaint of a pro se prisoner, "[a]n opportunity should be provided [to] the prisoner to develop his case at least to the point where any merit it contains is brought to light." *Taylor v. Gibson*, 529 F.2d 709, 713-14 (5th Cir. 1976). Because of this, before dismissing a prisoner complaint under Rule 12(b), a district court ordinarily should give the pro se litigant an opportunity to amend. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994); *accord Bruce v. Little*, 568 F. App'x 283, 285 (5th Cir. 2014).

### C.    <u>Motion for Summary Judgement</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial as the plaintiff, or as a defendant asserting an affirmative defense, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits. *Anderson*, 477 U.S. at 252. In such a case, the moving party must "establish beyond peradventure *all* of the essential elements of the claim or defense to

warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011).  Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials.  Fed. R. Civ. P. 56(c).

Once the moving party has made its showing, the burden shifts to the non-moving party to produce evidence that demonstrates the existence of a genuine issue of fact.  *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24).  All justifiable inferences are to be drawn in the non-moving party's favor.  *Anderson*, 477 U.S. at 255.  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for Summary Judgment."  *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) (internal citations omitted); *see also Eason*, 73 F.3d at 1325 (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment).  Although the Court may not evaluate evidence on a motion for summary judgment, the Court may make a determination as to the "caliber or quantity" of evidence as part of its determination of whether sufficient evidence exists for the fact-finder to find for the non-moving party.  *Anderson*, 477 U.S. at 254.

**D.**     **Claims Brought Pursuant to 42 U.S.C. § 1983**

Section 1983 creates a remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)). A plaintiff must satisfy three elements to establish § 1983 liability:

(1)    deprivation of a right secured by the U.S. Constitution or federal law;
(2)    that occurred under color of state law; and
(3)    was caused by a state actor.

*Victoria W. v. Larpenter*, 369 F. 3d 475, 482 (5th Cir. 2004) (citation omitted).

Because § 1983 does not create any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability." *Harrington v. Harris*, 118 F. 3d 359, 365 (5th Cir. 1997) (citation omitted). This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F. 2d 329, 333 (5th Cir. 1984).

E.    **Claims Brought Pursuant to *Bivens***

Suit brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), is somewhat of a counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties injured by federal actors. *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983–the only

difference being that § 1983 applies to constitutional violations by state, rather than federal officials"), *overruled on other grounds*, *Castellano v. Fragozo*, 352 F.3d 939, 948–49 & n.36 (5th Cir. 2003). A *Bivens* action provides a remedy for victims of constitutional violations by federal government officials in their individual capacities. *See Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994). Thus, *Bivens* provides a cause of action against federal agents in their individual capacities and requires a showing of personal involvement. *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 70-71 (2001); *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). To state a cognizable *Bivens* claim, a plaintiff must plead a deprivation of statutory or constitutional rights by a federal officer acting under color of federal law. *See Bivens*, 403 U.S. at 397.

## III.    Discussion

Mann makes clear in his original and amended complaints that he is seeking monetary compensation and other relief for defendants' alleged violations of his constitutional rights in and through the federal criminal process which led to his conviction and continued incarceration. He has brought claims against state and federal officials and other private entities without providing a jurisdictional or statutory basis for having done so. Nevertheless, whether his civil rights claims are considered to have been brought under § 1983 or the doctrine of *Bivens*, Mann's claims are malicious, frivolous, fail to state a claim for which relief can be granted, and seek relief against immune defendants for the reasons that follow. Thus, the Court hereby exercises its duty to screen Mann's prisoner civil rights complaint pursuant to 28 U.S.C. § 1915A. The Court's statutorily-required, initial review under § 1915A makes it unnecessary for the Court to address the defendants' motions, all of which should be dismissed as moot.

A.    **The *Heck* Doctrine**

Mann challenges the propriety of and his continued incarceration arising from his federal criminal conviction, including claims of ineffective assistance of counsel, use of perjured testimony, falsified evidence, and double jeopardy.  When a plaintiff asserts civil rights claims under either § 1983 or *Bivens* challenging his criminal conviction and sentence, the Court must consider the Supreme Court's doctrine espoused in *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny, which would bar review of such claims under most circumstances.

Pursuant to *Heck*, a § 1983 plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that "violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'"  *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (applying *Heck* to § 1983 claims) (quoting *Heck*, 512 U.S. at 486-87).  Although *Heck* addressed a § 1983 action related to a state conviction, the reasoning has since been extended to likewise prohibit *Bivens* actions that would impugn a federal conviction.  *Cardona v. United States*, 191 F. App'x 327, 328 (5th Cir. 2006) (dismissing a *Bivens* claim against federal prosecutors under *Heck*); *see Stephenson v. Reno*, 28 F.3d 26, 27 (5th Cir. 1994) (applying *Heck* to *Bivens* claims) ("for purposes of a civil rights action implicating the validity of a conviction, there should be no distinction between state and federal prisoners and that the analysis of a federal prisoner's *Bivens*-type action which implicated his conviction 'should parallel the analysis used to evaluate state prisoners' 1983 claims'").

The Supreme Court has clarified that dismissal under *Heck* also applies "no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original). Therefore, *Heck* applies to bar a prisoner's claims, whether he seeks monetary, injunctive, or declaratory relief. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (extending *Heck* to bar a prisoner's claim for money damages and declaratory relief challenging disciplinary hearing procedures); *VanBuren v. Walker*, 841 F. App'x 715, 716 (5th Cir. 2021) (recognizing *Heck* bar to "any injunctive relief" tied to habeas claim brought under § 1983); *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Edwards*, 520 U.S. at 641).

In this case, success on Mann's claims against defendants Montgomery, Dubourg, Harrell, JPSO, Landrieu, Privitera, Quinlan, Kennedy, Riehlmann, Ljungberg, and Matthews, including due process violations, double jeopardy, *Brady* violations, use of false or perjured testimony, manipulation of evidence, and ineffective assistance of counsel would without doubt imply the invalidity of his federal conviction and current imprisonment. Mann does not allege that his conviction has been overturned, invalidated, or in any way called into question, to allow his claims to proceed. The Court's records reflect that Mann has been denied post-conviction relief based on these same and similar claims. *See Casby*, 2018 WL 6602088, at *1 (order denying 28 U.S.C. § 2255 motion to vacate); *see also*, Crim. Action 11-130"L"(2), ECF No. 403 (June 24, 2019 Order citing *Gamble v. United States*, 139 S. Ct. 1960 (2019), to deny Casby's double jeopardy claim based on the dual-sovereignty doctrine).

Thus, Mann's claims against defendants Montgomery, Dubourg, Harrell, JPSO, Landrieu, Privitera, Quinlan, Kennedy, Riehlmann, Ljungberg, and Matthews, whether urged under § 1983 or *Bivens*, are exactly the type of claims that must be barred pursuant to *Heck*. *See*, *e.g.*, *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996) (*Heck* barred claim that defendant altered and destroyed evidence because "[c]onvictions tainted by the suppression, destruction, or alteration of material evidence violate a defendant's Fourteenth Amendment right to due process . . ." and if defendant altered and destroyed evidence, judgment would necessarily imply the invalidity of his subsequent convictions and sentences on those charges") (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and *Heck*, 512 U.S. at 486-87).  Therefore, the *Heck* doctrine requires that Mann's claims against defendants Montgomery, Dubourg, Harrell, JPSO, Landrieu, Privitera, Quinlan, Kennedy, Riehlmann, Ljungberg, and Matthews challenging the validity of his conviction and imprisonment must be dismissed with prejudice pending his compliance with the conditions expressed in *Heck*. *Johnson v. McElveen*, 101 F.3d 423, 424 (1996) (dismissal under *Heck* is with prejudice until the *Heck* conditions are met).

While it is clear that Mann's claims directly challenging his conviction and imprisonment are subject to dismissal under *Heck*, there exist alternative grounds to fully dismiss his claims now against defendants JPSO, Landrieu, Privitera, Quinlan, Kennedy, Riehlmann, Ljungberg, and Matthews (as well as other named defendants) in furtherance of judicial economy.  *See Patton v. Jefferson Corr'l Ctr.*, 136 F.3d 458, 462 n.6 (5th Cir. 1998) (when an action raises an issue of immunity, the court to the extent it is feasible to do so should determine that issue as early in the proceedings as possible); *Little v. Bd. of Pardons and Parole Division*, 68 F.3d 122, 123 (5th Cir. 1995) ("Even if a complaint is subject to dismissal under *Heck*, it remains appropriate for district

courts to resolve the question of immunity before reaching the *Heck* analysis.") (citing *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994)).  Thus, aside from the application of the *Heck* doctrine, the district court <u>must</u> address dismissal of improper claims and parties and immune defendants. *See Busick v. City of Madison, Miss.*, 90 F. App'x 713, 714 (5th Cir. 2004) (recognizing that the district court should first consider all grounds for dismissal other than *Heck*); *see also Boyd*, 31 F.3d at 284 (immunity must be considered as a threshold matter prior to applying *Heck*).

Therefore, because there exist the following alternative grounds for immediate dismissal of Mann's claims against JPSO, Landrieu, Privitera, Quinlan, Kennedy, Riehlmann, Ljungberg, and Matthews,[3] the *Heck* bar requires that Mann's claims against DNA Analysts Montgomery, Dubourg, and Harrell be dismissed with prejudice until such time as the *Heck* conditions are met.

### B.    <u>Other Grounds for Dismissal Exist</u>

#### 1.    <u>Maliciousness</u>

Pursuant to 28 U.S.C. § 1915A(b)(1), a court may dismiss a prisoner's complaint as malicious when it "seek[s] to relitigate claims which allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the [prisoner]." *Wilson v. Lynaugh*, 878 F. 2d 846, 850 (5th Cir. 1989).  A repetitive or duplicative case is malicious "if it involves 'the same series of events' and allegations of 'many of the same facts as an earlier suit.'" *Lewis v. Sec'y of Pub. Safety & Corr.*, 508 F. App'x 341, 344 (5th Cir. 2013) (quoting *Bailey v. Johnson*, 846 F. 2d 1019, 1021 (5th Cir. 1988)).

---

[3] Should a reviewing court disagree with the alternative dismissals recommended below, *Heck* would still require that the claims against defendants JPSO, Landrieu, Privitera, Quinlan, Kennedy, Riehlmann, Ljungberg, and Matthews be dismissed with prejudice until such time as the *Heck* conditions are met.

The Fifth Circuit has long held that filing a successive civil action that duplicates claims in a previous lawsuit qualifies as malicious under the screening statutes. *See Bailey*, 846 F. 2d at 1021. Even if a prior case may have involved different defendants, that fact does not affect the maliciousness of a successive action. *See id.* Likewise, the assertion of a new claim in a successive complaint that arises from the same allegations of a prior complaint is also considered a malicious. *See Potts v. Texas*, 354 F. App'x 70, 71 (5th Cir. 2009). District courts are "'vested with especially broad discretion' in determining whether such a dismissal is warranted." *Bailey*, 846 F. 2d at 1021.

In 2014, Mann a/k/a Casby brought a *Bivens* action in this Court against a number of defendants, including defendants Riehlmann, Landrieu, Kennedy, Quinlan, Privitera, and Ljungberg, alleging that defendants violated his constitutional rights during the criminal proceedings in Crim. Action 11-130. *See Casby v. Riehlmann*, Civ. Action 14-1170"L"(2), ECF Nos. 1, 25. Mann's claims therein included the same or similar claims of ineffective assistance of counsel, double jeopardy, *Brady* violations, use of false or perjured testimony, cruel and unusual punishment, denial of equal protection, and denial of compulsory process and a speedy trial, all of which led to his conviction. *Id.* On April 23, 2015, the District Court granted a number of motions to dismiss finding that Casby's prior criminal defense attorneys were not federal officers for purposes of a *Bivens* action, and Casby's *Bivens* claims otherwise were barred by *Heck. Id.*, ECF No. 69, 70. Mann's appeal was dismissed for want of prosecution. *Id.*, ECF No. 79.

Mann's current case is repetitive in large part of the claims presented in his prior, unsuccessful civil action before another section of this Court. Mann's current complaint, at least as to defendants Landrieu, Kennedy, Quinlan, Privitera, Ljungberg, Riehlmann, and Matthews, is subject to dismissal under § 1915A(b)(1) as malicious, because Mann without doubt seeks to

relitigate the same claims arising from the same factual background as those asserted in the prior lawsuit, Civ. Action 14-1770. *See Wilson*, 878 F. 2d at 850; *Lewis*, 508 F. App'x at 344.

The fact that Mann has added other defendants and other related claims is of no moment. His current claims involve "the same series of events" and allege violations arising from "many of the same facts" that are addressed in the previously filed complaint. *Bailey*, 846 F.2d at 1021. Mann's claims against Riehlmann, Landrieu, Kennedy, Quinlan, Privitera, and Ljungberg, are repetitive of his prior civil action, and therefore are considered malicious. Mann's claims in this case should be dismissed as malicious under 28 U.S.C. § 1915A.

Nevertheless, out of an abundance of caution, the Court also will address other available grounds for dismissal of Mann's current, malicious complaints.

### 2. Improper Parties and Immune Defendants

As noted above, to recover under § 1983, the plaintiff must identify both the constitutional violation and the responsible person acting under color of state law. *Flagg Bros., Inc.*, 436 U.S. at 155-56. Similarly, to state a cognizable *Bivens* claim, a plaintiff must plead a deprivation of statutory or constitutional rights by a federal officer acting under color of federal law. *See Bivens*, 403 U.S. at 397. In this case, Mann has named defendants who are either inappropriate parties and/or parties against whom § 1983 and *Bivens* provide no remedy, as well as a number of defendants who enjoy absolute immunity from suit for the actions alleged by Mann. Thus, the claims against a number of named defendants must be dismissed as a threshold matter aside from the application of the *Heck* doctrine.

### a. Jefferson Parish Sheriff's Office

Mann names JPSO as a defendant in this case, although he has not alleged any specific factually basis for having done so.  Nevertheless, one can glean under a broad reading that Mann sued JPSO for its deputies' role in his arrest and prosecution.  "However, a parish sheriff's office is not a legal entity capable of being sued in a federal civil rights action." *Francis v. Terrebonne Par. Sheriff's Office*, No. 08-4972, 2009 WL 4730707, at *2 (E.D. La. Dec. 9, 2009) (citing *Cozzo v. Tangipahoa Par. Council-Pres. Govt.*, 279 F.3d 273, 283 (5th Cir. 2002); *Causey v. Par. of Tangipahoa*, 167 F. Supp. 2d 898, 904 (E.D. La. 2001); *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988); *Martin v. Davis*, No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) (citing La. Stat. Ann. § 33:361).  The State of Louisiana grants no such legal status to any law enforcement office or department.  *Liberty Mut. Ins. Co. v. Grant Par. Sheriff's Dep't*, 350 So. 2d 236, 238 (La. App. 3d Cir. 1977).  Further, a Louisiana sheriff's office is not a "person" for purposes of § 1983 liability.[4]  *Calhoun v. Sanderson*, No. 01-3765, 2003 WL 1595088, *5 (E.D. La. Mar. 25, 2003); *Creppel v. Miller*, No. 92-2531, 1993 WL 21408, *1 (E.D. La. Jan. 22, 1993).

Because JPSO is not a person or suable entity to be held liable under § 1983 (or a federal agent for purposes of *Bivens*), Mann's claims against it should be fully dismissed pursuant to § 1915A as frivolous, and otherwise for failure to state a claim upon which relief can be granted.

### b.    Private Organizations

In his list of parties, Mann includes a number of social justice organizations as defendants, Black Lives Matter, the NAACP, the ACLU, and the Innocence Project through its New York and New Orleans offices, as well as the ASCLD.  While his claims against these entities are vague, it appears under a broad reading that his claims are that his requests for assistance from each entity

---

[4] Mann has not alleged, and this Court does not find, that JPSO can be considered a federal agent.

in his pursuits for federal post-conviction relief and redress for his alleged civil rights violations were rejected. He seems to assert that this rejection also violated his constitutional rights to due process and administrative review.

However, none of these entities are state or federal actors subject to suit under either § 1983 or *Bivens*, and Mann has provided no other basis for federal jurisdiction against these private entities. The NAACP is a private organization and not a state or federal actor for purposes of § 1983 and *Bivens*. *See Brunson v. U.S. Dist. Ct., Dist. S. Carolina*, No. 11-2313, 2011 WL 6122630, at *3 (D.S.C. Sep. 30, 2011) (NAACP is a private entity and neither a state nor federal actor for purposes of § 1983 and *Bivens*), *R&R adopted by* 2011 WL 6122578, at *1 (D.S.C. Dec. 9, 2011); *Johnson v. NAACP*, No. 17-357, 2018 WL 2416642, at *3 (E.D. La. May 29, 2018) (recognizing the NAACP as a private organization and not a state actor liable for abridgment of plaintiff's constitutional rights); *Dupree v. Mfume*, No. 03-2240, 2003 WL 22427744, at *1 (N.D. Tex. Oct. 20, 2003) (NAACP is private entity not state actor where plaintiff claimed it deprived his constitutional rights by not providing him with legal representation to challenge his conviction), *R&R adopted by* 2003 WL 22718534, at *1 (N.D. Tex. Nov. 10, 2003).

Similarly, the federal courts have consistently found that the Black Lives Matter movement is neither a person nor a state or federal actor for purposes of civil rights suits. *Loyola v. EPA*, No. 21-2714, 2022 WL 507648, at *1 (D.S.C. Jan. 11, 2022) (Black Lives Matter movement is not a person for purposes of § 1983), *R&R adopted by* 2022 WL 507439 (D.S.C. Feb. 18, 2022); *Lightfeather v. Woods*, 2021 WL 3172020, at *1 (D. Neb. Jul. 27, 2021) ("There is no indication that Black Lives Matter, a social-justice movement, is a juridical entity subject to suit," nor a "'person' or state actor within the meaning of section 1983."); *see also*, *Doe v. McKesson*, 945

F.3d 818, 834 (5th Cir. 2019), *judgment vacated on other grounds*, 141 S. Ct. 48 (2020) (Black Lives Matter was improper defendant for lack of showing that it was juridical entity under Louisiana law).  As a non-juridical entity and a non-government ideological movement, Black Lives Matter also would not qualify as a federal agent for purposes of *Bivens*.  *See Brown v. Fifth Jud. Dist. Drug Task Force*, 255 F.3d 475, 477 (8th Cir. 2001) (only "legal entities" are "subject to suit"; "a group of persons working together for a common purpose must first be found to have legal existence before the question of capacity to sue or be sued can arise.").

Likewise, the ACLU is neither a state nor federal actor subject to suit under § 1983 or *Bivens*.  *Riles v. Okl. County Dist. Atty.'s Office*, No. 22-599, 2022 WL 3268747, at *5 (W.D. Okl. Aug. 10, 2022) (ACLU not alleged to be a state actor for purposes of § 1983); *Durand v. NV ACLU*, No. 21-348, 2021 WL 4047040, at *3 (D. Nev. Aug. 17, 2021) (ACLU a private organization and not a state actor subject to suit under § 1983).  As a private organization, the ACLU also has no federal authority or agency for purposes of suit under *Bivens*.

The Innocence Project is also a private organization and not a state or federal actor subject to liability under § 1983.  *See Watson v. City of Philadelphia*, No. 18-4460, 2018 WL 5313348, at *3 (E.D. Pa. Oct. 25, 2018) (Innocent Project and its attorneys are not state actors).  As a private organization, the ACLU also has no federal authority or agency for purposes of suit under *Bivens*.

Finally, the ASCLD is a private accreditation organization for crime laboratories which requires participation in proficiency testing and inspection to ensure that the laboratory meets certain requirements.  *Mitchell v. Secretary, Dep't of Corrs.*, No. 19-457, 2022 WL 846142, at 15 (M.D. Fla. Mar. 22, 2022).  The Court can locate no source that would indicate that this entity is affiliated with any state government or federal agency to subject it to suit under either § 1983 or

*Bivens*. *See United States v. Mercado-Garcia*, No. 16cr1701, 2018 WL 5924390, at *5 (D.N.M. Nov. 13, 2018) (referring to the ASCLD as an "outside agency" separate from the Customs and Border Patrol laboratory).

Further, Mann has alleged no action by these private entities that could conceivably establish a nexus between the entities' actions and any state or federal actor or allowable action to find a basis to proceed against them in this civil rights suit. *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) ("[W]e have explained that the principal question at stake [in determining whether a private actor can be considered to have acted under color of state law] is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." (quotations and alteration omitted)).

In sum, Mann has failed to establish that any of these entities are subject to suit as state actors for purposes of § 1983 or federal actors for purposes of suit under *Bivens*. He also has presented no other basis for federal jurisdiction or plausible federal claim for the Court to allow his civil rights claims against these entities to proceed beyond the frivolousness review. Mann's claims against the defendants, Black Lives Matter, the NAACP, the ACLU, the ASCLD, and the Innocence Project through its New York and New Orleans offices, be fully dismissed pursuant to § 1915A(b)(1) as frivolous and otherwise for failure to state a claim for which relief can be granted.

c.     **<ins>Louisiana Attorney General Jeff Landry</ins>**

Mann has named Louisiana Attorney General Jeff Landry as a defendant. He has not asserted any discernable claims against Landry except that Landry somehow violated his constitutional rights when he received letter or complaint about the DNA contamination issues and

failed to act upon those complaints.  Because Mann made no distinction, the Court reviews his

claim as if brought against Landry in his individual and official capacities.

**i.**    <u>**Official Capacity**</u>

To the extent Mann seeks to sue Landry in an official capacity under § 1983 for an alleged

constitutional violation, his claims must be dismissed as frivolous and for failure to state a claim

for which relief can be granted.

State officials in their official capacities are not "persons" subject to suit under Section

1983 with respect to claims for monetary compensation like that sought by plaintiff.  *Will v. Mich.*

*Dep't of St. Police*, 491 U.S. 58, 71 (1989); *Stotter v. Univ. of Tex.*, 508 F.3d 812, 821 (5th Cir.

2007).  Moreover, under § 1983 claim against a state official in his official capacity for monetary

damages is actually a claim against the State itself, which is barred by the Eleventh Amendment.

*Williams v. Thomas*, 169 F. App'x 285, 286 (5th Cir. 2006).  Sovereign immunity under the

Eleventh Amendment bars actions for monetary relief in federal court against a State or state

agency unless the State has consented to be sued.  U.S. Const. amend. XI; *Pennhurst St. Sch. &*

*Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978);

*Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 318 (5th Cir. 2001).

Generally, the State of Louisiana has not waived its sovereign immunity or consented to

the exercise of federal judicial power in civil actions against it.  La. Stat. Ann. § 13:5106(A); La.

Const. art. I, § 26; *Harris v. La. Office of Juvenile Justice*, 2019 WL 2617175, at *4 (E.D. La. June

26, 2019) (citing *Holliday v. Bd. of Sup'rs of LSU Agr. & Mech. Coll.*, 149 So. 3d 227, 229 (La.

2014)).  Thus, in each unsanctioned instance of federal suit, the State or its agency must

affirmatively waive its Eleventh Amendment immunity.  *Sullivan v. Univ. of Texas Health Sci.*

*Ctr. at Houston Dental Branch*, 217 F. App'x 391, 394 (5th Cir. 2007) (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990)).  Because the State of Louisiana is immune from suit and has not waived its immunity, the claims against the State through Attorney General Landry in his official capacity are likewise barred by the Eleventh Amendment.

### ii.    <u>Individual Capacity</u>

As noted above, reading the complaints broadly, Mann sued Attorney General Landry for his failure to investigate Mann's letter/complaints about the DNA evidence processed through the JPSO and the DNA analysts named herein and used at his prior trials.  To the extent this claim would require a finding by this Court that the DNA evidence used at Mann's trial was mishandled or tainted or that the analysis evidence was faulty, any such claim is barred by *Heck* for the reasons stated above.

However, as to Landry individually, Mann has failed to allege the violation of a protected substantive or procedural constitutional right or that Landry acted under color of state law in failing to investigate his letter sent years after his federal conviction.[5]  Action under color of state law, for purposes of § 1983 liability, occurs when a defendant "'misuses or abuses his official power' and if 'there is a nexus between the victim, the improper conduct, and [the defendant's] performance of official duties.'"  *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (citing *United States v. Causey*, 185 F.3d 407, 415 (5th Cir. 1999)).  If, however, a state official, like Landry, acts or fails to act outside of or "<u>without</u> using or misusing the power granted to him by the state . . ., then he is <u>not</u> acting under color of state law."  *Harris v. Rhodes*, 94 F.3d 196, 197 (5th Cir. 1996).

---

[5] The complaints do not provide a specific date of the letter allegedly sent to Landry.  Mann only indicates that these evidentiary matters came to his attention after his conviction and letters of complaint were sent out in 2017.

Under Louisiana law, the attorney general has the authority to take certain actions <u>only</u> "[a]s necessary for the assertion or protection of any right or interest <u>of the state</u>." La. Const. art. 4 § 8. Among the actions the Attorney General can take on behalf of the State are "(1) to institute, prosecute, or intervene in any civil action or proceeding; (2) upon the written request of a district attorney, to advise and assist in the prosecution of any criminal case; and (3) for cause, when authorized by the court which would have original jurisdiction and subject to judicial review, (a) to institute, prosecute, or intervene in any criminal action or proceeding, or (b) to supersede any attorney representing the state in any civil or criminal action." *Id*. The Louisiana Attorney General has no authority on his own bring a criminal investigation or prosecution against a party unless so directed by a district attorney or court. *Fox v. Reed*, No. 99-3094, 2000 WL 288379, at *5 (E.D. La. Mar. 16, 2000). Therefore, Louisiana law does <u>not</u> authorize the Attorney General to take action of any kind on behalf of a citizen, a criminal defendant, or a convicted federal inmate.

Because of this, it necessarily follows that Landry had no authority under state law to take action on Mann's letter. Any failure on his part to take action was not violative of his duties or "under color of state law" for purposes of § 1983. Mann's claims against Landry, individually, are frivolous and otherwise fail to state a plausible claim under § 1983. His claims should be dismissed pursuant to § 1915A(b)(1) for these reasons.

### iii.  <u>Summary</u>

For all of the foregoing reasons, Mann's claims against Attorney General Landry in his individual and official capacities should be dismissed pursuant to § 1915A(b) as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief from an immune defendant.

### d. **Federal Defense Attorneys**

Mann has named three of his prior federal criminal defense attorneys as defendants, Jerome Matthews, Robin Ljungberg, and Michael Riehlmann.  Mann alleges that his attorneys were ineffective in failing to challenge DNA evidence chain of possession and the alleged improper actions of the prosecutors, DNA analysts, and each other.  However, "[a]ttorneys do not perform a function that is traditionally the exclusive province of the government when they represent an individual in a federal criminal proceeding." *Solesbee v. Nation*, No. 06-CV-0333, 2008 WL 244343, at *10 (N.D. Tex. Jan. 29, 2008).  Therefore, claims against private and appointed federal defense counsel "are simply not cognizable in [a] *Bivens* action." *Id.*; *McLeod v. Knowles*, 189 F. App'x 297, 297 (5th Cir. 2006) (". . .an attorney appointed to represent an indigent defendant is not subject to suit under § 1983 or *Bivens*."); *Sistrunk v. Breedy*, No. 11-889, 2011 WL 2976471, at *2 n.6 (E.D. La. June 22, 2011) ("A federal public defender is neither a state actor for purposes of § 1983 nor a federal officer for purposes of *Bivens*."), *R&R adopted by* 2011 WL 2971280 (E.D. La. July 22, 2011); *Davis v. Van Hook*, No. 13-3277, 2014 WL 1248291, at *2 (W.D. La. Mar. 25, 2014) ("Federal public defenders and other attorneys appointed by a federal court to represent a defendant in a federal criminal prosecution are not federal officers for purposes of a Bivens-type claim. They do not act on behalf of the government . . ."); *see also*, *Richards v. Flynn*, 263 F. App'x 496 (7th Cir. 2008) (affirming sua sponte dismissal of *Bivens* action against assistant federal public defender); *Allred v. McCaughey*, 257 F. App'x 91, 92-93 (10th Cir. 2007); *Haley v. Walker*, 751 F.2d 284, 285 (8th Cir. 1984) ("[A]n attorney appointed by a federal court is not a federal officer for purposes of a *Bivens*-type action."); *Bradford v. Shankman*, No. 85-5150, 1985 WL 13659, at *1 (6th Cir. Aug. 12, 1985) ("[A] private attorney and a federal public defender do not

act under color of federal law for purposes of a *Bivens* action."); *Cox v. Hellerstein*, 685 F.2d 1098, 1099 (9th Cir. 1982) ("If a public defender does not act under color of state law in representing an indigent defendant in a state criminal proceeding, it follows that a public defender does not act under color of federal law in performing the identical functions as a lawyer to an indigent defendant in a federal criminal proceeding").

Thus, aside from reasons for the interim *Heck* bar and maliciousness, Mann's claims against these defendants should be fully dismissed pursuant to § 1915A(b)(1) as frivolous and otherwise for failure to state a claim for which relief can be granted.

### e.    **Federal Prosecutors**

Mann named U.S. Attorney Evans as a defendant for his alleged failure to take action on his 2017 letter complaining about the DNA evidence issues from his prior federal trial. Mann also identified other current and former Assistant U.S. Attorneys, Landrieu, Privitera, Quinlan, and Kennedy, for their actions during the prosecution of the federal criminal charges leading to his conviction.

*Bivens* "provides a cause of action <u>only</u> against government officers in their individual capacities." *Affiliated Pro. Home Health Care Agency*, 164 F.3d at 286 (emphasis added); *see also Patterson v. Def. POW/MIA Accounting Agency*, 343 F. Supp. 3d 637, 648 (W.D. Tex. 2018) (dismissing a *Bivens* claim against a federal official because the claim was asserted against the official in his or her official capacity—not individual capacity).

In a *Bivens* action, a federal prosecutor individually enjoys absolute prosecutorial immunity in the performance of their official duties. *See Wilson v. Barcella*, No. K-05-3646, 2007 WL 963977, at *13 (S.D. Tex. Mar. 29, 2007), *aff'd*, 284 F. App'x 210 (5th Cir. 2008); *Imbler v.*

*Pachtman*, 424 U.S. 409, 430-31 (1976); *Yaselli v. Goff*, 275 U.S. 503 (1927). This immunity attaches to a particular official's functions, not to the particular office he or she holds. *Forrester v. White*, 484 U.S. 219, 229 (1988); *see also O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62 (5th Cir. 1997).

In the context of absolute prosecutorial immunity, immunity from suit extends to those acts "intimately associated with the judicial phase of the criminal process" which includes presentation of the State's case, evaluating evidence, and interviewing witnesses in preparation for trial. *Burns v. Reed*, 500 U.S. 478, 492 (1991). Prosecutorial immunity does not, however, extend to acts taken outside of the judicial process, like comments to the media or actions taken in a non-prosecutorial or administrative capacity. *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). Among the traditional functions of a prosecutor is the duty to decide which charges to bring and whether to pursue a prosecution or conviction in court. *See Kalina v. Fletcher*, 522 U.S. 118, 125 (1997). "Absolute immunity shelters prosecutors even when they act maliciously, wantonly or negligently." *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987) (quoting *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985)) (internal quotation marks omitted). This includes *Bivens* actions against a federal prosecutor when that federal prosecutor "was acting within the scope of his employment as a prosecutor[.]" *Rodriguez v. Lewis*, 427 F. App'x 352, 353 (5th Cir. 2011).

### i.    Assistant U.S. Attorneys Landrieu, Privitera, Quinlan, and Kennedy

Assistant U.S. Attorneys Landrieu, Privitera, Quinlan, and Kennedy, are sued here for allegations of constitutional violations arising from their specific actions taken during the prosecution of Mann's federal criminal case. These defendants, therefore, enjoy absolute immunity from suit. As the Fifth Circuit has concluded, a prosecutor is entitled to absolute

immunity when "initiating and pursuing a criminal prosecution," which is precisely what Mann challenges in this suit.  *See Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016).  Because the alleged wrongdoings and actions related to evidence, testimony, argument, and presentation of the government's case by Landrieu, Privitera, Quinlan, and Kennedy, fall within the scope of a federal prosecutor's employment, they each are entitled to absolute immunity.  *Boyd*, 31 F.3d at 285 ("Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and carrying the case through the judicial process . . . even if the prosecutor is accused of knowingly using perjured testimony.")  Aside from the *Heck* bar and maliciousness, Mann's *Bivens* claims against these defendants should be dismissed with prejudice as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief against an immune defendant.

### ii.    U.S. Attorney Evans

Mann's claims against U.S. Attorney Evans differ factually from those against the other prosecutors.  Mann does not allege that Evans, who was the Acting U.S. Attorney in 2017 and 2018 before his appointment as the U.S. Attorney in 2021, was involved in his criminal trial. Instead, he claims that Evans avoided his responsibilities by failing to investigate Man's 2017 letter of complaint about the DNA evidence and instead forwarded the letter to state and parish officials to address Mann's complaints.  While Evans' forwarding of the complaint was in fact an action taken on Mann's letter/request, Mann apparently feels Evans should have done more because the questioned DNA evidence was used in his federal trial years earlier.

Nevertheless, to the extent Evans' decision to forward the letter encompassed a decision to not "initiat[e] and pursu[e] a criminal prosecution," based on Mann's complaints, Evans' is entitled to absolute immunity from suit.  *See Loupe*, 824 F.3d at 539; *Buckley*, 509 U.S. at 272 ("We

expressly stated that 'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom,' and are nonetheless entitled to absolute immunity.") (quoting *Imbler*, 424 U.S. at 431, n.33).

Furthermore, to the extent Evans' role in evaluating Mann's letter may have been administrative rather than part of the judicial process, he would be entitled only to qualified immunity. *Imbler*, 424 U.S. at 431, n.33. Qualified immunity requires the Court to consider two factors: (1) whether the defendant's alleged conduct has violated a federal constitutional right; and (2) whether the right in question was clearly established at the time of the alleged violation. *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019). The defendant is entitled to qualified immunity when no constitutional violation occurred or if the conduct was not prohibited by law that was clearly established at the time of the incident. *Id*. Similarly, in review under § 1915A, the Court may dismiss a claim as frivolous when no constitutional violation is alleged.

Mann's complaints fail to provide facts sufficient to state a constitutional violation by Evans. As an initial matter, Mann's suggestion that Evans' actions or failure to act violated his ethical obligations does not state a constitutional violation. *Accord Davis v. Scherer*, 468 U.S. 183, 191, 194 (1984) ("Qualified immunity protects a government official's performance of discretionary functions from civil liability when the official's conduct has not violated clearly established federal statutory or constitutional rights of which a reasonable person would have been aware, even if the defendant's alleged conduct violated other standards such as internal guidelines, ethical principles, regulations or statutes.").

Furthermore, tangent to the doctrine of prosecutorial immunity, whether absolute or qualified, is the recognized rule that "a private citizen lacks a judicially cognizable interest in the

prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). According to Mann, Evans should have taken some investigative action, or perhaps brought criminal charges, against the DNA lab technicians and the JPSO investigators for their alleged inaccurate laboratory reports and contamination and spoliation of the DNA evidence used to obtain his conviction. Mann, however, has no protected right to compel the U.S. Attorney to pursue action against anyone, even if he was a "victim" to the alleged wrongdoings. *Id*. The Court can locate no law, much less clearly established law, obliging the U.S. Attorney to investigate victims complaints.

In fact, the Fifth Circuit recently reiterated that "it is not the province of the judiciary to dictate prosecutorial or investigative decisions." *Lefebure v. D'Aquilla*, 15 F.4th 650, 655 (5th Cir. 2022). Thus, in light of *Linda R.S.*, the Fifth Circuit made clear that a plaintiff has <u>no</u> right or standing to bring a civil rights complaint against a prosecutor for failure to investigate and prosecute another person, whether the plaintiff is seeking injunctive or monetary relief. *Id*.

For these reasons, Mann has not alleged a non-frivolous claim against Evans for failing to investigate or act on his letter/complaint in 2017. His claims against Evans should be dismissed pursuant § 1915A as frivolous, for failure to state a claim for which relief can be granted, and/or for seeking relief against an immune defendant.

## IV.    <u>Recommendation</u>

**IT IS THEREFORE RECOMMENDED** that Original Mann a/k/a Cyrus Casby's 42 U.S.C. § 1983 and/or *Bivens* claims against defendants DNA analysts Ann Montgomery, Bonnie Dubourg, and Greg Harrell be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A

as frivolous and otherwise for failure to state a claim for which relief can be granted until such time as the conditions under *Heck v. Humphrey*, 512 U.S. 477 (1994), are met.

**IT IS FURTHER RECOMMENDED** that Mann's § 1983 and/or *Bivens* claims against defendants Jefferson Parish Sheriff's Office, the Innocence Project – New Orleans, the Innocence Project – New York, the American Civil Liberties Union, the National Association for the Advancement of Colored People, Black Lives Matter, and the American Society of Crime Lab Directors be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Mann's § 1983 claims against defendant Louisiana Attorney General Jeff Landry, in his official and individual capacities, be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A as frivolous, for failure to state a claim for which relief can be granted, and/or for seeking relief against an immune defendant.

**IT IS FURTHER RECOMMENDED** that Mann's *Bivens* claims against defendants Michael Riehlmann, Robin Ljungberg, and Jerome Matthews be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A as malicious, as frivolous, and otherwise for failure to state a claim for which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Mann's *Bivens* claims against defendants U.S. Attorney Duane Evans and Assistant U.S. Attorneys Maurice Landrieu, Elizabeth Privitera, William Quinlan, and Gregory Kennedy be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A as malicious, as frivolous, for failure to state a claim for which relief can be granted, and/or for seeking relief against an immune defendant.

**IT IS FURTHER RECOMMENDED** that, in light of the foregoing recommendations, the **Motion to Dismiss (ECF No. 34)** filed by Louisiana Attorney General Jeff Landry, the **Motion to Dismiss for Failure to State a Claim (ECF No. 45)** filed by U.S. Attorney Duane Evans and Assistant U.S. Attorneys Maurice Landrieu, Elizabeth Privitera, William Quinlan, and Gregory Kennedy, the **Motion to Dismiss the Amended and Supplemental Complaints (ECF No. 47)** filed by Innocence Project, Inc., and the **Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6), or alternatively, For Summary Judgment Pursuant to F.R.C.P. 56 (ECF No. 53)** filed by Jefferson Parish Sheriff's Office be **DISMISSED WITHOUT PREJUDICE** as moot.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[6]

New Orleans, Louisiana, this _____1st_____ day of February, 2023.

KAREN WELLS ROBY<br>UNITED STATES MAGISTRATE JUDGE

---

[6]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.